# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PR GAINESVILLE, LLC, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UP DEVELOPMENT – GAINESVILLE | : | |
| 500 ACRES, LLC, | : | No. 18-957 |
|     Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                              May 1, 2018

This case is about a Florida land deal that never got off the ground. According to PR Gainesville, LLC ("PR Gainesville"), it had a deal with UP Development – Gainesville 500 Acres, LLC ("UP Development") to sell UP Development 507 acres of unimproved property in Florida for $22,500,000. As part of that agreement, UP Development deposited $150,000 in escrow. The deal never closed, and the parties are now fighting about which entity is entitled to the money in escrow. UP Development claims that the purported agreement lacked an essential term and thus no agreement between the parties ever existed.

PR Gainesville sued UP Development in the Philadelphia County Court of Common Pleas, claiming breach of contract. Following removal to this Court, UP Development filed a motion to dismiss, arguing that the case should be dismissed because this Court lacks personal jurisdiction over UP Development and because UP Development has failed to state a breach of contract claim. Because PR Gainesville has submitted an affidavit that asserts that UP Development had numerous contacts with individuals located in Pennsylvania while negotiating the deal, as well as contact within Pennsylvania trying to resuscitate the deal, the Court concludes that it has personal jurisdiction over UP Development. As for UP Development's argument that Plaintiffs failed to state

a claim for breach of contract, this argument is best addressed at summary judgment. Based on the allegations in the Complaint, PR Gainesville has stated a claim. UP Development's motion will therefore be denied.

I.  **FACTUAL BACKGROUND**

   A.  **PR Gainesville's Allegations**

PR Gainesville is a Delaware business entity located in Philadelphia. (Compl. ¶ 1.) UP Development is located in Florida. (*Id*. ¶ 2.) PR Gainesville owns 500 acres of real property in Florida, which, on April 28, 2015, it agreed to sell to UP Development for $22,500,000. (*Id*. ¶¶ 5–7.) After the parties executed the agreement of sale, UP Development deposited $150,000 in escrow and entered a due diligence period that ran from April 28, 2015 through June 27, 2015. (*Id*. ¶¶ 8–11.) During the due diligence period, UP Development was permitted to terminate the agreement and have its deposit returned. (*Id*. ¶ 12.) If the buyer failed to terminate the agreement during the due diligence period, it lost the right to do so later. (*Id*. ¶ 13.) The agreement required a closing date sixty days after the expiration of the due diligence period, which PR Gainesville asserts was August 26, 2015. (*Id*. ¶¶ 15, 18.) UP Development did not close on the property on August 26, 2015. (*Id*. ¶ 19.) On August 28, 2015, PR Gainesville informed UP Development that its deposit was non-refundable. (*Id*. ¶ 21.)

UP Development stated that it believed that the effective date of the agreement was June 5, 2015, not April 28, 2015. (*Id*. ¶ 20.) An effective date of June 5, 2015, meant that the closing date would have been October 3, 2015. (*Id*. ¶ 22.) UP Development did not close on the property on October 3, 2015. (*Id*. ¶ 23.)

On September 2, 2015, UP Development stated that it believed that the effective date of the agreement was August 28, 2015, not June 5, 2015, which would make the closing date December 26, 2015. (*Id*. ¶¶ 24–25.) UP Development again did not close on the property on December 26, 2015. (*Id*. ¶ 26.)

On August 3, 2016, and again on November 16, 2016, and again on September 22, 2017, PR Gainesville gave written notice to UP Development that it was terminating the agreement due to UP Development's various defaults. (*Id*. ¶¶ 27, 30, 32.) When PR Gainesville demanded disbursement of the deposit pursuant to the agreement, UP Development objected. (*Id*. ¶¶ 29, 31, 33.)

The Complaint claims that UP Development breached the agreement by failing to close by the date provided in the agreement. (*Id*. ¶¶ 44–54.) PR Gainesville claims that it is entitled to keep the deposit as a result of the breach. (*Id*. ¶ 54.) The Complaint also alleges that UP Development breached the covenant of good faith and fair dealing. (*Id*. ¶¶ 67–70.) PR Gainesville also seeks attorney's fees under Florida law. (*Id*. ¶¶ 59–65.)

### B. UP Development's Connection to Pennsylvania

PR Gainesville included in its opposition to Defendant's motion to dismiss a declaration from Joshua Schrier, who is the Vice President of Acquisitions for Pennsylvania Real Estate Investment Trust, which is located in Philadelphia. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss Ex. A [Schrier Decl.].) According to Schrier, Scott Fish, who resides in Tennessee, and is the principal of UP Development, "introduced himself" to Pennsylvania Real Estate Investment Trust "after acquiring a parcel of real estate in Orlando that had been adjacent to another property owned by one of [Pennsylvania Real Estate Investment Trust's] affiliate entities." (*Id*. ¶ 3.) After that deal was consummated, Fish sought out additional deals with Schrier's company, including the deal that is

3

now before the Court. (*See id.* ¶¶ 4–6.) On January 12, 2015, Fish flew to Philadelphia to negotiate this deal; this was "one of many trips made by Mr. Fish to Philadelphia during the relevant time period." (*Id.* ¶¶ 7–8.) Following the first meeting in January, Fish's lawyer, from his office in Philadelphia, continued to negotiate as UP Development's agent. (*Id.* ¶ 9.) According to Schrier, the lawyers continued to negotiate "in Philadelphia by way of hundreds of calls and emails." (*Id.* ¶ 10.) Fish also continued to deal with Schrier, and on many occasions, Fish "was also physically present in Pennsylvania at the time of the call or email." (*Id.*) Schrier believed that Fish, on UP Development's behalf, came to Philadelphia at least one additional time, prior to executing the agreement, to meet with Schrier's representatives. (*Id.* ¶ 11.) Fish also met with Schrier and representatives of his company on at least two additional occasions after the agreement was executed, including a meeting "to discuss the ramifications of Buyer's failure to close on the subject transaction and the potential for resuscitating the deal." (*Id.* ¶ 14.)

## II.  STANDARD OF REVIEW

### A.  Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 233.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

### B. Personal Jurisdiction

With respect to the motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction over the moving defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). If no evidentiary hearing on the motion is conducted, the plaintiff need

make only a prima facie case of personal jurisdiction, and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor. *Id*.

### III. DISCUSSION

#### A. Personal Jurisdiction

UP Development argues that the case should be dismissed because this Court lacks personal jurisdiction over it.

A district court "exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(k)). The Pennsylvania long-arm statute allows courts to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b).

The Due Process Clause requires a plaintiff to show that a defendant has sufficient "minimum contacts" with the forum state to satisfy traditional notions of fair play and substantial justice. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction comes in two flavors: general and specific. General jurisdiction "exists when a defendant has maintained systemic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Specific jurisdiction applies if the non-resident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to

adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."). This Court is concerned with specific jurisdiction.[1]

Whether specific jurisdiction exists requires a three-part inquiry: (1) did the defendant purposefully direct its activities at the forum; (2) does the litigation arise out of or relate to at least one of those activities; and (3) does the exercise of jurisdiction otherwise comport with fair play and substantial justice? *O'Connor*, 496 F.3d at 317.

Although contracting with a resident of the forum state is by itself insufficient to confer personal jurisdiction over a non-resident defendant, courts may consider the contract, as well as prior negotiations, the parties' actual course of dealing, and contemplated future consequences when deciding whether specific jurisdiction exists. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996); *see also Leone v. Cataldo*, 574 F. Supp. 2d 471, 478 (E.D. Pa. 2008) ("To determine the existence of personal jurisdiction over a breach of contract claim, a court must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing."). A court should also look at "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Physical entrance into the forum is not required because much business is conducted solely by mail and electronically across state lines. *See Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985). Therefore, communications sent by a defendant into the forum either by mail or telephone can also

---

[1] UP Development argued that this Court does not have general personal jurisdiction, to which PR Gainesville asserted that this Court has both general and specific personal jurisdiction over UP Development. PR Gainesville has not come close to demonstrating this Court has general personal jurisdiction over UP Development.

count toward the minimum contacts required to establish personal jurisdiction. *Grand Entm't Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993) (holding that the court had personal jurisdiction over a breach of contract case in which the defendants had not physically entered the forum, but had sent numerous electronic communications into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations).

UP Development's motion to dismiss rests largely on what it terms PR Gainesville's failure to include factual allegations in the Complaint that would establish personal jurisdiction. The Court cannot fault UP Development for this tactic because when UP Development filed its motion to dismiss, the Complaint included the only factual allegations set forth by PR Gainesville. The record before this Court, however, is further developed. The record now includes a declaration that sets forth factual allegations that further illuminate the formation of the contract. According to that declaration, UP Development's agent sent many communications into Pennsylvania to negotiate the deal that is now before the Court. Additionally, that agent entered Pennsylvania several times to negotiate the deal and even came to Pennsylvania after the deal was executed and the relationship soured, attempting to resuscitate the deal. These are not inconsequential entrees into Pennsylvania; according to PR Gainesville, significant negotiating and work on this deal occurred in Pennsylvania, and the parties' dealings subsequent to entering into the agreement also occurred in Pennsylvania. It is thus clear to this Court that UP Development purposefully directed activities into the Commonwealth.

Next, the Court concludes that the litigation arises out of or relates to at least one of these activities. This is particularly true because UP Development put forth the theory that PR Gainesville failed to properly describe the exact property being conveyed, thus calling into question whether the

parties had the meeting of the minds necessary to form a contract. If the issue of whether a contract exists is going to be a key issue in this litigation, the negotiations and discussions prior to signing any paperwork take on added importance. At any rate, the very deal that the parties are fighting about in this Court was heavily discussed and negotiated in Pennsylvania. Clearly, this litigation relates to UP Development's activities here, including the agreement that the parties ultimately negotiated. *See CALA Diamonds, LLC v. HRA Grp. Holdings*, Civ. A. No. 17-1136, 2017 WL 4222886, at *6 (E.D. Pa. Sept. 22, 2017) ("In contract cases, however, federal courts may exercise specific jurisdiction if the defendant's contacts with the forum were instrumental in either formation of the contract or its breach.").

Finally, the Court must determine whether asserting personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. To decide this issue, courts should look to the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). Once a plaintiff has established sufficient minimum contacts with the forum, the defendant faces a heavy burden and must make a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Leone*, 574 F. Supp. 2d at 482.

UP Development cannot meet its burden here. UP Development states that it would be substantially burdened if forced to travel from Florida and litigate in Pennsylvania, especially because the property is in Florida. (Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss Pl.'s Compl. [Def.'s Mem.] at 14.) The Court does not see any great burdens here. Defendant may have to occasionally come to Philadelphia, but Defendant does not provide any evidence that such travel would significantly impact its operations. UP Development had no problems negotiating in

9

Pennsylvania, and therefore the Court sees no reason why it should have problems litigating in Pennsylvania. The Court also thinks the location of the property is largely irrelevant. This is a breach of contract case in which no jury demand has been made; it is therefore highly unlikely that any court personnel will need to travel to Florida to examine the land. And if Plaintiff wishes to examine the property, then Plaintiff will be responsible for getting its personnel from Pennsylvania to Florida. But having established minimum contacts here, there is nothing unfair or unjust about litigating in Pennsylvania.

This Court concludes that it has personal jurisdiction over UP Development for the litigation presently before the Court.

### B. Failure to State a Claim

UP Development argues that PR Gainesville has failed to state a claim for breach of contract or breach of the covenant of good faith and fair dealing because "the parties never created an enforceable contract." (Def.'s Mem. at 16.) According to Defendant, the parties never came to an agreement because the parties failed to agree on an essential term, the legal description of the property for sale. (*Id*. at 16–19.)

This is an interesting argument and perhaps it will ultimately be on solid footing. But this a motion to dismiss, and Plaintiff has alleged the formation of a contract to buy land and has alleged that Defendant deposited $150,000 in escrow pursuant to the terms of that agreement. Plaintiff even attached the purported contract between the parties. Maybe Defendant will be able to convince a fact finder that no contract was ever formed. Plaintiff has, at this early stage of this litigation, stated a breach of contract claim and a breach of the covenant of good faith and fair dealing.

Finally, the Court will not dismiss Plaintiff's request for attorneys' fees under Florida law.

These arguments require contract interpretation best left for summary judgment.

IV.    **CONCLUSION**

PR Gainesville has established that this Court has personal jurisdiction over UP Development. The Court also concludes that Plaintiff has stated claims for a breach of contract and breach of the covenant of good faith and fair dealing. The Court will therefore deny Defendant's motion to dismiss in its entirety. An Order consistent with this Memorandum will be docketed separately.